Mitchell F. Boomer (State Bar No. 121441)
Joshua A. Kuns (State Bar No. 272206)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, CA 94111
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail: boomerm@jacksonlewis.com
E-mail: joshua.kuns@jacksonlewis.com

Attorneys for Defendants
APPLE, INC. and JEANNINE NITTNER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINA HANSON,<br><br>       Plaintiff,<br><br>       v.<br><br>APPLE, INC. a Corporation; JEANNINE NITTNER; and DOES 1 through 15, inclusive,<br><br>       Defendants. | Case No.<br><br>**NOTICE OF REMOVAL**<br><br>**[28 U.S.C. § 1331]**<br><br>**Marin County Superior Court No. CV 1401451**<br><br>Complaint Filed: 04/17/2014<br>Trial Date: None set |

TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF JINA HANSON, AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants APPLE, INC. ("Apple") and JEANNINE NITTNER ("Nittner"), hereby invoke this Court's jurisdiction under the United States Constitution, Article 3, § 2, provisions of 28 U.S.C. §§ 1331, 1367 and 1441(a) and remove the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Marin.

**PRELIMINARY STATEMENT OF JURISDICTION**

1.     This Court has original jurisdiction over this action under the United States Constitution, Article 3, § 2 and 28 U.S.C. § 1331, and this action is therefore one that may be removed to this Court by Defendants under 28 U.S.C. § 1441(a), in that it is a civil action alleging a claim arising from federal law.

1

2.     This Court has supplemental jurisdiction over all other claims as each claim is within the same case or controversy as the claim arising from federal law.

**VENUE**

3.     Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a), which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." As stated above, Plaintiff brought this action in the Superior Court of the State of California in and for the County of Marin. Thus, venue properly lies in the United States District Court for the Northern District of California under 28 U.S.C. §§ 84(a), 1391(a) and 1441(a).

**PLEADINGS, PROCESS AND ORDERS**

4.     On or around April 17, 2014, Plaintiff Jina Hanson ("Plaintiff") filed a civil complaint against Apple and Jeannine Nittner, in the Superior Court of the State of California in and for the County of Marin ("Superior Court") entitled *Jina Hanson v. APPLE, INC. a Corporation; JEANNINE NITTNER; and DOES 1 through 15, inclusive, Defendants*, Case No. CV1401451 ("Complaint"). Plaintiff's Complaint sets forth fourteen (14) causes of action, numbered as follows: (1) violation of the Family Medical Leave Act; (2) retaliation in violation of the Family Medical Leave Act; (3) discrimination in violation of Govt. Code §12945.2; (4) harassment based on sex; (5) gender discrimination; (6) failure to prevent harassment and discrimination; (7) retaliation in violation of Govt. Code §§12940, *et seq.*; (8) failure to provide rest periods in violation of Labor Code §§226.7 & 512; (9) failure to pay overtime in violation of Labor Code §1198; (10) failure to furnish accurate wage statements in violation of Labor Code §226; (11) failure to pay wages upon termination in violation of Labor Code §201, *et seq.*; (12) wrongful termination in violation of public policy; (13) intentional infliction of emotional distress; and (14) civil penalties under Labor Code §§2699, *et seq*.

5.     Plaintiff served the Summons and Complaint upon Apple by delivering a copy of the Summons and Complaint to CT Corp, Apple's registered agent for service of process, on

April 24, 2014.  Plaintiff served Nittner with a copy of the Summons and Complaint on May 19, 2014 when Nittner accepted service of the Summons and Complaint (via notice of acknowledgment of receipt).  (A copy of the conformed Summons, Complaint and other related court documents served on Defendants is attached as Exhibit A).

6.      Defendants each filed answers to the Complaint with the Marin County Superior Court on May 21, 2014.  (True and correct copies of Defendants' answers to the complaint are attached hereto as Exhibit B.)

## TIMELINESS OF REMOVAL

7.      This Notice of Removal is timely because this Notice of Removal is filed within thirty (30) days after Defendant Apple was served with papers from which it could first be ascertained that the case was removable.  *See* 28 U.S.C. § 1446(b).  The Notice of Removal is also timely because this Notice of Removal is filed within thirty (30) days of Nittner having accepted service of the Summons and Complaint via acknowledgement and receipt.

## FEDERAL QUESTION JURISDICTION

8.      Federal "district courts shall have original jurisdiction of all civil actions under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331; *see also* 28 U.S.C. § 1367(a).

9.      "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

10.      Plaintiff's first and second causes of action were brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  *See* Exhibit A at ¶¶ 34-49, ¶¶ 50-63, ¶ 163.

11.      Accordingly, Plaintiff's first and second causes of action arise under federal law, and permit removal based on federal question jurisdiction.

## SUPPLEMENTAL JURISDICTION

12.      Plaintiff's third, sixth, twelfth and thirteenth cause of action arise from the same

3

transaction and rely on identical and/or substantially common facts for the resolution and thus form part of the same controversy under Article III as Plaintiff's first and second causes of action. *See* Exhibit A.

13.     Plaintiff's remaining causes of action also rely in whole or in part on the same course of conduct that Plaintiff alleges gives rise to her claims under the FMLA against Defendants.  For example, Plaintiff alleges that she took a long leave of absence on or about May 21, 2012.  *See* Exhibit A at ¶ 12.  Plaintiff alleges she was then told that her leave of absence was putting a strain on other managers, and was thus forced to return to work early for fear of retaliation.  Id. at ¶¶ 14-15.  Once Plaintiff returned, and allegedly in retaliation for her exercising her rights under the FMLA, she claims she was scheduled to work over five consecutive days in a row, as well as from home "off-the-clock" to complete her work. Id. at ¶ 17.  Further, Plaintiff alleges that in retaliation for taking medical leave she was scrutinized and treated differently than her male counterparts.  Id. at ¶ 20-21.  Plaintiff alleges she was forced to work alone on the sales floor which resulted in missed meal and rest periods.  Id. at ¶ 23.  Plaintiff alleges she complained about the aforementioned retaliatory behavior and was subsequently put on a performance improvement plan and eventually terminated.  Id. at ¶¶ 27-30.  The foregoing facts used to support Plaintiff's FMLA and FMLA retaliation claims will also form the basis of her gender discrimination claims and wage and hour claims.

14.     Because this court has original jurisdiction over Plaintiff's first and second causes of action, this court should exercise supplemental jurisdiction over Plaintiff's remaining claims – which are within the same case or controversy – pursuant to 28 U.S.C. § 1367.  *See also Sea-Land Service, Inc. v. Lozen International*, 285 F.3d 808, 813 (9th Cir. 2002); *Picard v. Bay Area Regional Transit Dist.*, 823 F. Supp. 1519, 1526 (N.D. Cal. 1993).

## CONSENT TO REMOVAL

15.     Defendants each bring this removal action, and thus each consents to this removal.

///

///

///

1

**CONCLUSION**

2    16.    WHEREFORE, Defendants pray that the above action now pending against them

3 in the Superior Court of the State of California for the County of Marin be removed to this Court.

4

5 Dated:  May 23, 2014                      JACKSON LEWIS P.C.

6

7                                        By:__/s/ Mitchell F. Boomer_____
                                            Mitchell F. Boomer

8                                           Joshua A. Kuns
                                            Attorneys for Defendants

9                                           APPLE, INC. and JEANNINE NITTNER

10
   4830-1201-0011, v.  2
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL                              Case No. _____

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*



FILED

APR 17 2014

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

APPLE, INC., a Corporation; JEANNINE NITTNER; and DOES 1
through 15, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JINA HANSON, an individual,

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Marin County Superior Court

3501 Civic Center Drive
San Rafael, California 94903

**CASE NUMBER:**
*(Número del Caso):*
1401451

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gina DeVito, DeVito Law Group, 1505 Bridgeway, Suite 203, Sausalito, California 94965, (415) 729-9118

| DATE:
*(Fecha)* | APR 17 2014 | KIM TURNER E. CHAIS
*(Secretario)* | , Deputy
*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

(SEAL)

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

GINA DEVITO, State Bar No. 153647
ANGIE GUEVARA, State Bar No. 226288
**DEVITO LAW GROUP**
1505 Bridgeway, Suite 203
Sausalito, California 94965
Telephone: 415.729.9118
Facsimile 415.729.9117

Attorneys for Plaintiff
JINA HANSON

**FILED**

APR 17 2014

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

BY FAX

JINA HANSON, an individual,

    Plaintiff,

    vs.

APPLE, INC., a Corporation; JEANNINE NITTNER; and DOES 1 through 15, inclusive,

    Defendants.

CASE NO. CV 1401451

**PLAINTIFF JINA HANSON'S COMPLAINT FOR DAMAGES FOR:**

1. VIOLATION OF THE FAMILY MEDICAL LEAVE ACT;
2. RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT;
3. DISCRIMINATION IN VIOLATION OF GOVT. CODE §12945.2;
4. HARASSMENT BASED ON SEX;
5. GENDER DISCRIMINATION;
6. FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION;
7. RETALIATION IN VIOLATION OF GOVT. CODE §§12940, ET SEQ.
8. FAILURE TO PROVIDE REST PERIODS IN VIOLATION OF LABOR CODE §§226.7 & 512
9. FAILURE TO PAY OVERTIME IN VIOLATION OF LABOR CODE §1198
10. FAILURE TO FURNISH ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE §226
11. FAILURE TO PAY WAGES UPON TERMINATION IN VIOLATION OF LABOR CODE §201, ET SEQ.
12. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

-1-

13. INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS; AND
14. CIVIL PENALTIES UNDER
LABOR CODE §§2699, ET SEQ.

DEMAND FOR JURY TRIAL

Plaintiff JINA HANSON alleges against defendants APPLE, INC., JEANNINE NITTNER and DOES 1 through 15, inclusive, and each of them, (hereinafter collectively "DEFENDANTS") as follows and demands a trial by jury on all matters herein alleged.

## THE PARTIES

1.      Plaintiff JINA HANSON (hereinafter "HANSON") at all times mentioned herein was and is an adult natural person and a resident of the County of Marin, California.

2.      Defendant APPLE, INC. (hereinafter "APPLE") at all times mentioned herein was and is a corporation doing business in the County of Marin, State of California.

3.      Defendant JEANNINE NITTNER (hereinafter "NITTNER") at all times mentioned herein was and is an adult natural person and a resident of the County of Marin, California.   NITTNER was a store manager and HANSON'S direct supervisor at all times mentioned herein.

4.      The true names and capacities whether individual, corporate, associate or otherwise, of the defendants designated herein as DOES 1 through 15 are unknown to HANSON at this time and therefore HANSON sues such defendants by such fictitious names.  HANSON will amend this complaint to set forth the true names and capacities of the defendants named herein as DOES when such has been ascertained.  Each of the defendants named herein as DOE is responsible in whole or in part for the damages alleged herein.

5.      At all times mentioned herein each of the defendants DOES 1 through 15 was and is residing in the state of California or doing business in the state of California.

6.      At all times mentioned herein each of the defendants was acting as the agent, employee or servant of each of the remaining defendants and in doing the acts alleged herein was acting either as an individual or within the course and scope of such agency, employment or

-2-

1   service.

2         7.      Venue and jurisdiction are based on the fact that the conduct which is the subject of

3   this Complaint occurred in the County of Marin, California.

4                             **FACTUAL ALLEGATIONS**

5         8.      APPLE is a corporation that designs, develops, and sells consumer electronics,

6   computer software and personal computers. APPLE owns and operates a chain of retail stores

7   throughout the United States and the world, including several in Northern California.

8         9.      On or about November 21, 2010, APPLE hired HANSON to work in its Corte

9   Madera store as a non-exempt manager with a starting salary of $32.93 per hour.

10        10.     In her first two years of employment with APPLE, HANSON received glowing

11   reviews and commendations for her work and leadership skills.

12        11.     On or about May 21, 2012, HANSON suffered a broken neck. At the advice of

13   her treating physician, HANSON required a lengthy absence from work for treatment of her

14   injury and recuperation. HANSON requested and was given a medical leave of absence from

15   work under APPLE'S medical leave policy. HANSON'S supervisors and team members at work

16   were well aware of her medical leave of absence.

17        12.     While still on medical leave, NITTNER, HANSON'S supervisor, contacted her at

18   home and demanded she provide evaluation ratings for each of HANSON'S team members at

19   work for the 2012 calendar year. NITTNER also required HANSON to complete a self-

20   evaluation. HANSON was not paid for the time spent completing the evaluations.

21        13.     In or about the first week in June 2012, after an appointment with her physician,

22   HANSON contacted NITTNER and informed her about her physician's recommendation that

23   HANSON continue on her medical leave of absence. HANSON informed NITTNER that her

24   physician said he would re-evaluate HANSON'S condition at her next medical appointment and

25   that any decision regarding HANSON'S return to work on a restricted status was contingent on

26   HANSON'S physician's ability to review her MRI results. HANSON informed NITTNER that

27   her MRI was scheduled for June 28, 2012.

28        14.     In    response    to    HANSON'S    communication    about    her    physician's

-3-

recommendations. NITTNER told HANSON that her absence was putting a "strain" on the other managers at work and "jeopardizing" employees' requests for vacation. NITTNER told HANSON that her time away from work was having a negative impact on HANSON'S team. NITTNER pressured HANSON to return to work earlier than HANSON'S physician had advised. She also told HANSON that a doctor will do whatever you tell them to do and that HANSON needed to get back to work.

15. As a result of her conversation with NITTNER, HANSON felt pressured to return to work earlier than recommended by her physician. HANSON asked her doctor's office to provide a release to return to work immediately. Given the timing and urgency of HANSON'S request for a release, HANSON'S doctor did not have an opportunity to see HANSON or evaluate her condition to determine if an early release to work was appropriate. A nurse practitioner, who also did not see HANSON, signed a release to return to work. The release contained the following work restrictions: HANSON was advised not to work more than four hours per day and was restricted to performing desk duties. HANSON sent the release to her supervisor.

16. HANSON returned to work on or about the second week in June 2012.

17. In HANSON'S first week back at work, HANSON was scheduled to work six days in a row and was scheduled or required to work several minutes or hours past the four hours per day recommended by her physician. This practice continued throughout the period of restricted duty. Additionally, HANSON was pressured to complete certain projects by specified dates, which required HANSON to continue to work from home several hours each evening after her day at the store in order to complete the projects on time. The company's failure to comply with the work restrictions recommended by HANSON'S physician continued even after her neurologist advised that the four-hour-a-day restriction should continue to the middle of July.

18. After HANSON'S return to work from medical leave, the company proceeded to target HANSON, scrutinize her work and micromanage her. For example, HANSON was issued warnings for alleged tardiness even on the occasions her tardiness was caused by lunch meetings with NITTNER. HANSON was also issued a warning point when she had not arrived late to

-4-

work or had not violated any other company policy. HANSON is aware that the males of the Corte Madera store were not issued warnings or otherwise reprimanded for the conduct for which she was targeted.

19.    In or about mid-July 2012, one of the Corte Madera store managers commented that the schedules of the other managers were being impacted because of HANSON'S four-hour-a-day schedule. Fearing for her job's security, HANSON asked her doctor to release her to full-time status without restrictions. Per HANSON'S request, HANSON'S physician released HANSON to return to work on a full-time status without restrictions. HANSON'S physician released her without seeing her or evaluating her condition.

20.    Once HANSON was released to full-time status, APPLE frequently scheduled her to work the night shift, often without assistance or back-up. The male employees, including those in management, were not so scheduled.

21.    In or about the latter part of January 2013, HANSON discovered she was being held to a different disciplinary standard than the male employees in the store. HANSON was issued more warning points for certain alleged company policy violations than the males in the store for the same or similar conduct; the male employees were not issued any points or were issued less points for said conduct. Also, time and recording practices were skewed in favor of the males in the store. There were also several male employees in the store who had been issued the maximum number of points warranting dismissal; yet, the company did not follow its own policies and kept said male employees employed.

22.    At all times relevant herein, HANSON was subjected to other discriminatory/disparate treatment based on her gender. The conduct included, but is not limited to, the following:

      a.  NITTNER and other managers requiring and/or expecting HANSON to perform the tasks that male employees did not want to perform;

      b.  Female managers, including HANSON, required to work about 90% of the split shifts;

      c.  NITTNER and other managers requiring and/or expecting HANSON to act in

-5-

a passive and docile manner when dealing with male team members;

    d.    NITTNER calling HANSON by gender-specific and demeaning terms, such as "doll";

    e.    NITTNER asking HANSON to "put on [her] lips to meet with clients in the store";

    f.    NITTNER and other managers making comments to and about HANSON regarding her looks and anatomy;

    g.    NITTNER evaluating HANSON on her looks; on these occasions NITTNER would stare at and examine HANSON from head to toe.

To HANSON'S humiliation and degradation, the demeaning comments and conduct to which she was subjected occurred in the presence of HANSON'S team members and others. The male employees of the Corte Madera store were not subjected to the same or similar conduct.

23.    At all relevant times mentioned herein, HANSON was routinely denied rest breaks. On these occasions, HANSON was the only manager in the store, or was scheduled to be on the sales floor, or no one was made available to relieve HANSON so that she could take a rest break. HANSON did not receive additional or premium pay for the days she was denied a rest break.

24.    At all relevant times mentioned herein, HANSON was routinely required to work off the clock. For example, when HANSON was required to close the store or when she worked the night shift with the closing manager, HANSON was responsible for completing closing procedures for the store and the remote stockroom, which entailed completing a walkthrough of the store and turning on the alarm in the store, including the break room and remote stockroom. The closing procedures regularly took between 15 to 20 minutes to complete (longer if other issues would arise). On some of these occasions, the stockroom computers would be disabled such that HANSON was unable to clock in or clock out. HANSON was not paid for the time spent performing store closing procedures on these occasions.

25.    At all relevant times mentioned herein, HANSON was sometimes required to and

did work seven consecutive days. Based on information and belief, HANSON was not paid a premium for the first eight (8) hours worked on the seventh day.

26. At all relevant times mentioned herein, HANSON was sometimes required to and did work seven consecutive days without a day off for rest.

27. In the latter part of January 2013 and continuing through February 2013, HANSON complained to management, including NITTNER, about the disparate treatment to which she was being subjected, including the unfair and discriminatory manner in which warning points were being issued and about a male senior manager. To the best of HANSON'S knowledge, her complaints were not investigated by APPLE.

28. Shortly after HANSON made her complaints to management, HANSON was placed on a 30-day performance improvement plan. The plan contained several false entries, including statements that management had met with HANSON on a number of dates. As part of the plan, HANSON was required to meet with the same manager she had complained about on a weekly basis to monitor her improvement. The senior manager about whom HANSON had complained and NITTNER would be responsible for deciding whether HANSON would keep her job at the expiration of the 30-day improvement plan.

29. HANSON complied with all of the objectives of the performance improvement plan and did not receive any further warnings for the duration of the applicable 30 days. Additionally, HANSON was acknowledged by her team at work and management for the positive strides she had achieved over the last month.

30. Approximately two weeks after the expiration of the plan's 30-day period, on or about April 21, 2013, HANSON was terminated from her position with APPLE for alleged inability to meet the performance expectations of a managerial position.

31. On January 21, 2014, a letter was sent to the California Labor & Workforce Development Agency ("LWDA") on behalf of HANSON pursuant to Labor Code §§2699 and 2699.3 regarding the alleged violations of sections of the Labor Code as stated herein. A return receipt was received from the LWDA confirming receipt of HANSON'S letter with a postmark date of January 22, 2014. On or about February 20, 2014, a letter was received from the LWDA

-7-

dated February 19, 2014 stating the LWDA did not intend to investigate HANSON'S allegations. The LWDA'S declination provides HANSON the right to file her civil action under the Private Attorney General Act of 2004 of the State of California for violations of Labor Code §§201, 204, 226, 226.7, 510, 512, and 1194 and seek attorney fees and costs as allowable by law.

32.    Within one year of the date of HANSON'S termination from APPLE, HANSON filed a complaint with the California Department of Fair Employment and Housing (hereinafter "DFEH").

33.    On or about January 22, 2014, the DFEH issued to HANSON a notice of her right to file a civil action against APPLE and NITTNER for discrimination, harassment and retaliation under the Fair Employment and Housing Act.

### FIRST CAUSE OF ACTION
**Violation of the Family Medical Leave Act**
**(Against All DEFENDANTS)**

34.    HANSON incorporates by reference and realleges Paragraphs 1 through 33 as though fully set forth herein.

35.    The Family Medical Leave Act (FMLA) (29 U.S.C. §2615) prohibits an employer or any other person from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the FMLA.

36.    At all times mentioned herein, APPLE was an "employer" covered by 29 U.S.C. §§2611, et seq.

37.    At all times mentioned herein, NITTNER was a "person" acting directly or indirectly in the interest of APPLE as it concerns employees of APPLE and therefore is covered by 29 U.S.C. §§2611, et seq.

38.    At all times mentioned herein, HANSON was an employee eligible under 29 U.S.C. §§2611, et seq. to take a medical leave of absence.

39.    In or about May 2012, HANSON exercised her right to take a medical leave of absence due to her own serious medical condition requiring continued treatment and supervision by her health care provider. HANSON provided APPLE with reasonable notice, or gave notice as soon as possible, of her need for medical leave, including its expected timing and length.

-8-

1    HANSON'S medical leave was certified by her health care provider and approved by APPLE.

2        40.      DEFENDANTS refused and failed to grant HANSON her request for FMLA

3    leave and/or interfered with HANSON'S right to take FMLA leave.

4        41.      While HANSON was on physician recommended and company-approved FMLA

5    leave, NITTNER demanded that HANSON work from home. NITTNER thereafter pressured

6    and/or forced HANSON to obtain a medical release releasing HANSON to return to work earlier

7    than HANSON'S physician had ordered and prior to HANSON making a full recovery. For fear

8    of losing her job, in June 2012, HANSON obtained the medical release demanded by NITTNER,

9    which released HANSON to return to work on a part-time basis with restrictions; HANSON was

10    advised not to work more than four hours per day and was restricted to performing only desk

11    duties.

12        42.      Upon HANSON'S return to work and continuing through the period of restricted

13    duty, DEFENDANTS required HANSON to work six days in a row and several minutes or hours

14    past the four hours per day recommended by her physician. HANSON was also pressured to

15    complete certain projects by specified dates, requiring HANSON to continue to work from home

16    several hours each evening after her day at the store in order to complete the projects on time.

17        43.      In or about mid-July 2012, HANSON was told by management that her part-time

18    schedule was negatively impacting the other managers at APPLE. For fear of losing her job,

19    HANSON was pressured and/or forced to obtain a medical release releasing HANSON to full-

20    time status without restrictions earlier than HANSON'S physician had ordered and prior to

21    HANSON making a full recovery.

22        44.      When HANSON returned to work from her medical leave, DEFENDANTS also

23    subjected HANSON to various forms of disparate treatment, including micromanaging her work

24    and subjecting her to disciplinary measures. Other employees of APPLE who had not taken

25    medical leaves of absence or who were otherwise healthy were not treated in the same or similar

26    manner.

27        45.      In or about March 2013, DEFENDANTS placed HANSON on a performance

28    improvement plan based, in part, on inaccurate and/or false information.

46. On or about April 21, 2013, APPLE terminated HANSON'S employment with APPLE though she had met all of the requirements of the performance improvement plan.

47. As a direct and proximate result of the foregoing conduct, HANSON was harmed in that she has suffered the loss of the wages, salary, benefits and additional amounts of money HANSON would have recovered had DEFENDANTS not terminated HANSON'S employment. As a result of such conduct, HANSON has suffered damages in an amount according to proof. Pursuant to 29 U.S.C. §2617, HANSON is entitled to and hereby requests damages equal to the wages, salary, employment benefits and other compensation denied or lost by reason of DEFENDANTS' unlawful conduct as alleged herein and interest calculated on said monies at the prevailing rate.

48. As a further direct and proximate result of the foregoing conduct, HANSON has incurred attorney's fees and costs in an amount according to proof. Pursuant to 29 U.S.C. §2617, HANSON is entitled to and hereby requests an award of reasonable attorney's fees and costs incurred in this action.

49. In doing the acts herein mentioned, DEFENDANTS acted in bad faith and had no reasonable grounds for terminating HANSON as alleged herein. DEFENDANTS' conduct warrants the assessment of liquidated damages pursuant to 29 U.S.C. §2617.

WHEREFORE, HANSON prays judgment against all DEFENDANTS, and each of them, as hereafter set forth.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the Family Medical Leave Act
### (Against All DEFENDANTS)

50. HANSON incorporates by reference and realleges Paragraphs 1 through 49 as though fully set forth herein.

51. The FMLA (29 U.S.C. §§2611, et seq.) prohibits an employer or any other person from discharging or otherwise discriminating against an employee for taking a medical leave of absence.

52. At all times mentioned herein, APPLE was an "employer" covered by 29 U.S.C. §§2611, et seq.

-10-

53.    At all times mentioned herein, NITTNER was a "person" acting directly or indirectly in the interest of APPLE as it concerns employees of APPLE and is therefore covered by 29 U.S.C. §§2611, et seq.

54.    At all times mentioned herein, HANSON was an employee eligible under 29 U.S.C. §§2611, et seq. to take a medical leave of absence.

55.    In or about May 2012, HANSON exercised her right to take a medical leave of absence due to her own serious medical condition requiring continued treatment and supervision by her health care provider. HANSON provided APPLE with reasonable notice, or gave notice as soon as possible, of her need for medical leave, including its expected timing and length. HANSON'S medical leave was certified by her health care provider and approved by APPLE.

56.    DEFENDANTS refused and failed to grant HANSON her request for FMLA leave and/or interfered with HANSON'S right to take FMLA leave.

57.    When HANSON returned to work from her medical leave, DEFENDANTS subjected HANSON to various forms of disparate treatment, including micromanaging her work and subjecting her to disciplinary measures. Other employees of APPLE who had not taken medical leaves of absence or who were otherwise healthy were not treated in the same or similar manner.

58.    In or about March 2013, DEFENDANTS placed HANSON on a performance improvement plan based, in part, on inaccurate and/or false information.

59.    On or about April 21, 2013, APPLE terminated HANSON'S employment with APPLE though she had met all of the requirements of the performance improvement plan.

60.    DEFENDANTS retaliated against HANSON by micromanaging her work performance, subjecting her to disciplinary measures, and terminating her employment for taking a medical leave of absence. HANSON'S exercise of her right to take a medical leave of absence was a motivating factor for DEFENDANTS' conduct, including the termination of HANSON'S employment with APPLE.

61.    As a direct and proximate result of the foregoing conduct, HANSON was harmed in that she has suffered the loss of the wages, salary, benefits and additional amounts of money

-11-

HANSON would have recovered had DEFENDANTS not terminated HANSON'S employment. As a result of such conduct, HANSON has suffered damages in an amount according to proof. Pursuant to 29 U.S.C. §2617, HANSON is entitled to and hereby requests damages equal to the wages, salary, employment benefits and other compensation denied or lost by reason of DEFENDANTS' unlawful conduct as alleged herein and interest calculated on said monies at the prevailing rate.

62.     As a further direct and proximate result of the foregoing conduct, HANSON has incurred attorney's fees and costs in an amount according to proof. Pursuant to 29 U.S.C. §2617, HANSON is entitled to and hereby requests an award of reasonable attorney's fees and costs incurred in this action.

63.     In doing the acts herein mentioned, DEFENDANTS acted in bad faith and had no reasonable grounds for terminating HANSON as alleged herein. DEFENDANTS' conduct warrants the assessment of liquidated damages pursuant to 29 U.S.C. §2617.

WHEREFORE, HANSON prays judgment against all DEFENDANTS, and each of them, as hereafter set forth.

### THIRD CAUSE OF ACTION
Discrimination in Violation of Government Code § 12945.2
(Against APPLE)

64.     HANSON incorporates by reference and realleges Paragraphs 1 through 63 as though fully set forth herein.

65.     California Government Code §12945.2 makes it an unlawful employment practice for an employer to discharge, fine, suspend, expel or otherwise discriminate against an employee because the employee exercised her right to family care and medical leave.

66.     At all times mentioned herein, APPLE was an "employer" covered by Government Code §12945.2.

67.     At all times mentioned herein, HANSON was an employee eligible under Government Code §12945.2 to take a medical leave of absence.

68.     In or about May 2012, HANSON exercised her right to take a medical leave of absence due to her own serious medical condition requiring continued treatment and supervision

-12-

by her health care provider. HANSON provided APPLE with reasonable notice, or gave notice as soon as possible, of her need for medical leave, including its expected timing and length. HANSON'S medical leave was certified by her health care provider and approved by APPLE.

69. DEFENDANTS refused and failed to grant HANSON her request for medical leave and/or interfered with HANSON'S right to take medical leave.

70. When HANSON returned to work from her medical leave, DEFENDANTS subjected HANSON to various forms of disparate treatment, including micromanaging her work and subjecting her to disciplinary measures. Other employees of APPLE who had not taken medical leaves of absence or who were otherwise healthy were not treated in the same or similar manner.

71. In or about March 2013, DEFENDANTS placed HANSON on a performance improvement plan based, in part, on inaccurate and/or false information.

72. On or about April 21, 2013, APPLE terminated HANSON'S employment with APPLE though she had met all of the requirements of the performance improvement plan.

73. DEFENDANTS retaliated against HANSON by micromanaging her work performance, subjecting her to disciplinary measures, and terminating her employment for taking a medical leave of absence. HANSON'S exercise of her right to take a medical leave of absence was a motivating factor for DEFENDANTS' conduct, including the termination of HANSON'S employment with APPLE.

74. As a direct and proximate result of the foregoing conduct, HANSON has suffered the loss of the wages, salary, benefits and additional amounts of money HANSON would have recovered had APPLE not terminated HANSON'S employment. As a result of such conduct, HANSON has suffered damages in an amount according to proof.

75. As a further direct and proximate result of the foregoing conduct, HANSON has incurred attorney's fees and costs in an amount according to proof. Pursuant to Government Code §12965, HANSON is entitled to and requests an award of reasonable attorney's fees and costs incurred in this action.

76. As a further direct and proximate result of the foregoing conduct, HANSON has

suffered the loss of employment-related experience and opportunities from which she was terminated in an amount according to proof.

77.     As a further direct and proximate result of the foregoing conduct, HANSON has suffered humiliation, mental anguish, outrage, emotional and physical distress, and has been injured in mind and body in that she also suffered severe trauma to her nervous system, a loss of sleep, and problems with concentration. As a result of such conduct, HANSON has suffered damages in an amount according to proof.

78.     APPLE acted with malice, oppression and fraud and in reckless disregard of HANSON'S rights in engaging in the aforementioned conduct in that APPLE acted with the intent to cause HANSON emotional distress, or with reckless disregard of the probability of causing HANSON emotional distress. APPLE acted with malice, oppression and fraud, and in reckless disregard of HANSON'S rights under Government Code §12945.2, in that APPLE discriminated against HANSON by terminating her employment. APPLE, through its managing agents, officers and directors, including NITTNER, authorized and ratified the discrimination directed at HANSON.  APPLE'S conduct warrants the assessment of punitive damages in an amount sufficient to punish APPLE and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against APPLE as set forth below.

### FOURTH CAUSE OF ACTION
#### Harassment Based on Sex
#### (Against all DEFENDANTS)

79.     HANSON incorporates by reference and realleges Paragraphs 1 through 78 as though fully set forth herein.

80.     California Government Code §12940(j)(1) makes it an unlawful employment practice "for an employer, . . . or any other person, because of . . . sex . . . to harass an employee. . . ."

81.     At all times relevant herein, NITTNER harassed HANSON on the basis of sex. Over the course of her employment with APPLE. APPLE through NITTNER subjected HANSON to unwanted and unsolicited offensive comments and conduct of a sexual nature.

82.     Said harassment created a hostile and abusive work environment for HANSON as

-14-

it was so pervasive and severe as to alter the conditions of HANSON'S employment and affected HANSON'S ability to perform the necessary functions of her job.

83.   APPLE was aware of the harassing acts as it was HANSON'S supervisor at the company who engaged in the harassment. APPLE, however, failed to take any appropriate corrective action and/or prevent or stop the harassment from occurring.

84.   At all times mentioned herein, NITTNER was HANSON'S direct supervisor and, in doing the acts herein described and referred to, was acting in the course and within the scope of her authority as an employee and supervisor and in the transaction of the business of the office, employment or agency. NITTNER personally harassed HANSON and others at APPLE on the basis of sex. APPLE is therefore liable to HANSON for the acts of NITTNER as heretofore alleged.

85.   To the best of HANSON'S knowledge, APPLE failed and/or refused to take any appropriate corrective action and/or prevent or stop the harassment from occurring despite its knowledge of the harassment; instead APPLE authorized and ratified NITTNER'S behavior by refusing to acknowledge any wrongdoing by NITTNER. APPLE, through NITTNER, created and maintained an abusive work environment at APPLE.

86.   As a direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of the wages, salary, benefits and additional amounts of money HANSON would have recovered if APPLE had not terminated HANSON'S employment. As a result of such harassment and consequent harm, HANSON has suffered damages in an amount according to proof.

87.   As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has incurred attorneys' fees and costs.

88.   As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of employment-related experience and opportunities from which she was terminated in an amount according to proof.

89.   As a further direct and proximate result of the foregoing conduct, HANSON has been harmed in that HANSON has suffered humiliation, mental anguish, outrage, emotional and

-15-

physical distress, harm to earning capacity and has been injured in mind and body in that she also suffered severe trauma to her nervous system, loss of sleep, and problems with concentration. As a result of such harassment and consequent harm, HANSON has suffered damages in an amount according to proof.

90.    NITTNER acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights in engaging in the aforementioned conduct in that NITTNER acted with the intent to cause HANSON emotional distress, or with reckless disregard of the probability of causing HANSON emotional distress. APPLE acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights under the FEHA, in that APPLE knew of the harassment and failed to take immediate and appropriate corrective action to stop the harassment. APPLE, through its managing agents, officers and directors authorized and ratified the harassment directed at HANSON. APPLE continued to retain NITTNER with advance knowledge of her unfitness and with a conscious disregard of the rights and safety of others after learning of her conduct towards HANSON. NITTNER'S and APPLE'S conduct as alleged above warrants the assessment of punitive damages in an amount sufficient to punish DEFENDANTS and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against all DEFENDANTS, and each of them, as set forth below.

### FIFTH CAUSE OF ACTION
### Gender Discrimination
### (Against APPLE)

91.    HANSON incorporates by reference and realleges Paragraphs 1 through 90 as though fully set forth herein.

92.    California Government Code §12940(a) makes it an unlawful employment practice "For an employer, because of the...sex... of any person...to discriminate against the person in terms, conditions, or privileges of employment."

93.    APPLE is a business entity organized and existing under the laws of the State of California and is subject to suit under the FEHA in that APPLE regularly employs five or more persons.

-16-

94.    At all times mentioned herein, APPLE, through its officers, agents and employees, including NITTNER, treated HANSON differently than the store's male employees on the basis of her gender. HANSON was micromanaged and subjected to arbitrary disciplinary measures to which the male employees were not subjected. HANSON was also subjected to gender specific inappropriate comments; no male employees of APPLE were treated in like manner.

95.    APPLE knew of these harassing and discriminatory acts as it had knowledge of the harassment and discrimination. As more particularly set forth above, at all times relevant herein, APPLE was made aware of the harassment and discrimination of HANSON, who complained to management about the conduct. To the best of HANSON'S knowledge, at all times relevant herein, the DEFENDANTS, including NITTNER, failed to take any appropriate corrective action and/or prevent or stop the harassment and discrimination from occurring.

96.    APPLE failed to remedy the harassment and discriminatory conduct to which HANSON was subjected despite her repeated complaints. Instead, APPLE refused to acknowledge any wrongdoing by its employees, including NITTNER.

97.    APPLE'S conduct toward HANSON constitutes disparate treatment in that it was based solely on the fact that HANSON is a female. APPLE, through its male agents and employees and HANSON'S supervisor, NITTNER, intentionally subjected HANSON to constant harassment and discrimination during her employment with APPLE because of HANSON'S gender.

98.    APPLE and NITTNER'S discriminatory actions against HANSON, as alleged above, constitutes unlawful harassment and discrimination in employment on account of gender in violation of Government Code §12940. Said harassment and discrimination created a hostile and abusive work environment for HANSON as it was pervasive and severe so as to alter the conditions of HANSON'S employment such that it affected HANSON'S ability to perform the necessary functions of her job.

99.    At all times mentioned herein, NITTNER was the officer, agent and employee of APPLE and in doing the acts herein described and referred to, was acting in the course and

-17-

within the scope of her authority as officer, agent and employee and in the transaction of the business of the employment or agency. APPLE is therefore liable to HANSON for the acts of NITTNER as heretofore alleged.

100. To the best of HANSON'S knowledge, APPLE failed and/or refused to take any appropriate corrective action and/or prevent or stop the discrimination from occurring despite HANSON'S complaints to the DEFENDANTS, including NITTNER, regarding the discrimination; instead APPLE authorized and ratified its employees' behavior by refusing to acknowledge any wrongdoing by the employees and by continuing to employ them. APPLE, through its employees, including NITTNER, created and maintained an abusive working environment at APPLE.

101. As a direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of the wages, salary, benefits and additional amounts of money HANSON would have recovered if APPLE had not caused the termination of HANSON'S employment. As a result of such discrimination and consequent harm, HANSON has suffered damages in an amount according to proof.

102. As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has incurred attorneys' fees and costs.

103. As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of employment-related experience and opportunities from which she was terminated in an amount according to proof.

104. As a further direct and proximate result of the foregoing conduct, HANSON has been harmed in that HANSON has suffered humiliation, mental anguish, outrage, emotional and physical distress, harm to earning capacity and has been injured in mind and body in that she also suffered severe trauma to her nervous system, loss of sleep, and problems with concentration. As a result of such discrimination and consequent harm, HANSON has suffered damages in an amount according to proof.

105. NITTNER acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights in engaging in the aforementioned conduct in that NITTNER acted with the

-18-

intent to cause HANSON emotional distress, or with reckless disregard of the probability of causing HANSON emotional distress. APPLE acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights under the FEHA in that the APPLE knew of the discrimination and failed to take immediate and appropriate corrective action to stop the discrimination. APPLE, through its managing agents, officers, directors, including NITTNER, authorized and ratified the discrimination directed at HANSON. APPLE continued to retain the responsible employees with advance knowledge of their unfitness and with a conscious disregard of the rights and safety of others after learning of their conduct towards HANSON. NITTNER'S and APPLE'S conduct, as alleged above, warrants the assessment of punitive damages in an amount sufficient to punish APPLE and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

## SIXTH CAUSE OF ACTION
### Failure to Prevent Harassment and Discrimination
### (Against APPLE)

106. HANSON incorporates by reference and realleges Paragraphs 1 through 105 as though fully set forth herein.

107. California Government Code §12940(k) makes it an unlawful employment practice "for an employer...to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." The duty imposed on APPLE by Government Code §12940(k) includes conducting an investigation into known incidences of harassment and discrimination.

108. At all times mentioned herein, APPLE owed HANSON the duty to take all reasonable steps necessary to prevent discrimination and harassment from occurring, including investigating known incidences of harassment and discrimination as alleged above.

109. APPLE breached its duty to HANSON by failing to take all reasonable steps to prevent such discrimination and harassment as set forth above. APPLE failed and refused to address, correct, stop or reprimand NITTNER'S and others' behavior as alleged above and instead ratified their behavior by failing to take any action whatsoever against NITTNER and

others and refusing to acknowledge any wrongdoing by NITTNER and others. APPLE'S failure to take all reasonable steps to prevent discrimination and harassment from occurring, and specifically, its failure to conduct an investigation into known incidences of harassment and discrimination, was in violation of the FEHA.

110. As a proximate result of APPLE'S breach of its duty to take any reasonable steps to prevent the harassment and discrimination of HANSON, including conducting an investigation of the harassment as alleged above, HANSON has been harmed in that HANSON has suffered the loss of the wages, salary, benefits, and additional amounts of money HANSON would have recovered had APPLE not terminated HANSON, and attorneys' fees and costs. As a result of such discrimination, harassment, and consequent harm, HANSON has suffered damages in an amount according to proof.

111. As a further proximate result of APPLE'S conduct as alleged above, HANSON has been harmed in that HANSON has suffered humiliation, mental anguish, and emotional distress, and has been injured in mind and body, in that she also suffered severe trauma to her nervous system, including anxiety, depression, nervousness, loss of sleep, and problems with concentration. As a result of such conduct, HANSON has suffered damages in an amount according to proof.

112. APPLE acted with malice, oppression, and fraud, and in reckless disregard to HANSON'S rights under the FEHA in that APPLE either discriminated against and harassed HANSON, and/or knew of the discrimination and harassment and failed to take immediate and appropriate corrective action to stop the discrimination and harassment. APPLE, through its managing agents, officers, directors, and defendants, including NITTNER, authorized and ratified the harassment and discrimination directed at HANSON. APPLE retained NITTNER with advance knowledge of her unfitness and with a conscious disregard of the rights and safety of others after learning of her conduct toward HANSON. APPLE'S conduct warrants the assessment of punitive damages in an amount sufficient to punish APPLE and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against APPLE as set forth below.

-20-

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of Government Code §12940, et seq.
### (Against APPLE)

113.   HANSON incorporates by reference and realleges Paragraphs 1 through 112 as though fully set forth herein.

114.   From the inception of HANSON'S employment with APPLE, NITTNER and others at APPLE engaged in a pattern of inappropriate and/or unlawful conduct directed at HANSON, as set forth more fully herein, based on her sex and gender. The harassment and discrimination occurred in the presence of the DEFENDANTS, including NITTNER, and APPLE was made aware of the harassment by HANSON.

115.   Beginning in January 2013 and continuing through February 2013, HANSON made several complaints to management, including NITTNER, about the disparate treatment, harassment and unlawful conduct, as set forth more fully herein.

116.   Beginning in or about February 2013 and continuing until HANSON'S termination in April 2013, APPLE retaliated against HANSON by, among others, placing her on a 30-day performance improvement plan and altering her time records so that warning points would attach for the discrepancies added. The retaliation was in response to HANSON'S complaints to APPLE regarding disparate treatment, harassment and/or discrimination. Such conduct violated California's public policy as set forth in California Government Code §12940(h) which prohibits employers from retaliating against employees for exercising their rights under the FEHA.

117.   As a direct and proximate result of HANSON'S protected conduct in exercising her rights under the FEHA as set forth above, and in violation of public policy as set forth above, APPLE terminated HANSON'S employment in April 2013.

118.   As a direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of the wages, salary, benefits and additional amounts of money HANSON would have recovered if APPLE had not terminated HANSON'S employment. As a result of such conduct, HANSON has suffered damages in an amount according to proof.

-21-

119. As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has incurred attorneys' fees and costs.

120. As a further direct and proximate result of the foregoing conduct, HANSON has been injured in that HANSON has suffered the loss of employment-related experience and opportunities from which she was terminated in an amount according to proof.

121. As a further direct and proximate result of the foregoing conduct, HANSON has been harmed in that HANSON has suffered humiliation, mental anguish, outrage, emotional and physical distress, and has been injured in mind and body in that she also suffered severe trauma to her nervous system, loss of sleep, and problems with concentration. As a result of such conduct, HANSON has suffered damages in an amount according to proof.

122. NITTNER acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights in engaging in the aforementioned conduct in that NITTNER acted with the intent to cause HANSON emotional distress, or with reckless disregard of the probability of causing HANSON emotional distress. APPLE acted with malice, oppression and fraud, and in reckless disregard to HANSON'S rights under the FEHA in that (1) APPLE either discriminated and/or harassed HANSON, and/or knew of the discrimination and harassment and failed to take immediate and appropriate corrective action to stop the discrimination and harassment, (2) APPLE, through its managing agents, officers, directors and NITTNER, authorized and ratified the discrimination and harassment directed at HANSON, and (3) APPLE retaliated against HANSON for exercising her rights under the FEHA. APPLE'S conduct warrants the assessment of punitive damages in an amount sufficient to punish APPLE and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

////
////
////
////
////

## EIGHTH CAUSE OF ACTION
### Failure to Provide Rest Periods
### In Violation of Labor Code §§226.7
### (Against APPLE)

123.    HANSON incorporates by reference and realleges Paragraphs 1 through 122 as though fully set forth herein.

124.    At all times relevant herein, Wage Orders issued by the Industrial Welfare Commission, including Wage Order No. 4, requires an employer to provide its employees a rest period of ten minutes for every four-hour period (or major fraction thereof) worked per day.

125.    At all times relevant herein, Wage Order No. 4 provided, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof....authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

126.    At all times relevant herein, Labor Code §226.7 provided that no employer shall require any employee to work during any rest period mandated by an applicable order of the Industrial Welfare Commission.

127.    At all relevant times mentioned herein, HANSON worked, on average, over eight hours per day.  Under the provisions of the Labor Code and relevant Wage Orders, as set forth above, APPLE should have provided HANSON with at least two rest periods of ten minutes each per day.  However, APPLE failed to provide HANSON with the mandated rest periods on numerous occasions during her employment with APPLE.

128.    APPLE'S failure to provide HANSON with the mandated rest periods violates the relevant Wage Orders and Labor Code § 226.7 and is therefore unlawful.

129.    As a direct and proximate result of APPLE'S failure to provide HANSON with the requisite rest periods, HANSON has accrued wages and interest in an amount to be determined as provided by Labor Code § 218.6.

130. Pursuant to Labor Code § 218.5, HANSON is entitled to and requests an award of reasonable attorney's fees and costs incurred in this action.

WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

### NINTH CAUSE OF ACTION
#### Failure to Pay Overtime
#### In Violation of Labor Code §1198
#### (Against APPLE)

131. HANSON incorporates by reference and realleges Paragraphs 1 through 130 as though fully set forth herein.

132. At all times relevant herein, Labor Code §1198 provided that it is unlawful for an employer to employ persons for periods longer than the hours set by the Industrial Welfare Commission or under conditions prohibited by the applicable wage orders.

133. At all times relevant herein, Wage Orders issued by the Industrial Welfare Commission, including Wage Order No. 4, provided that employees employed for more than 8 hours in one day are entitled to payment at the rate of one-and-one-half of the employees' regular rate of pay for hours worked in excess of 8 hours in one day or more than 40 hours per week.

134. On numerous occasions over the course of her employment with APPLE, APPLE required HANSON to work, and HANSON did work, over 8 hours per day or more than 40 hours per week for which she was not paid overtime.

135. On information and belief, APPLE required HANSON to work, and HANSON did work, over seven consecutive days without receiving overtime pay for the additional time worked on numerous occasions over the course of her employment with APPLE.

136. Under the provisions of Labor Code §1198 and the relevant Wage Orders as set forth above, HANSON should have been paid overtime for hours worked during the period referred to herein and for which she was not compensated. APPLE has failed and refused to pay HANSON the amount owed. As a direct and proximate result of APPLE'S failure to pay overtime wages as required, HANSON has accrued lost overtime pay and interest in an amount as yet undetermined but within the jurisdiction of this Court.

137. APPLE'S failure to pay HANSON overtime, as set forth above, violates Labor

-24-

1  Code §1198 and the relevant wage orders and is therefore unlawful.

2      138.  Pursuant to Labor Code §1194, HANSON requests that the Court award

3  HANSON reasonable attorney's fees and costs incurred by her in this action.

4      WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

5                          **TENTH CAUSE OF ACTION**
                      **Failure to Furnish Accurate Wage Statements**
6                       **In Violation of Labor Code §226**
                              **(Against all APPLE)**
7

8      139.  HANSON incorporates by reference and realleges Paragraphs 1 through 138 as

9  though fully set forth herein.

10     140.  Labor Code §226 requires employers, either semi-monthly or at the time of each

11 payment of wages, to furnish each employee with an accurate itemized statement in writing

12 showing, *inter alia*, gross wages earned, total hours worked by the employee, all deductions, net

13 wages earned, and inclusive dates of the period for which the employee is paid.

14     141.  Labor Code §226, including subsection (e), provides that if an employer

15 knowingly and intentionally fails to provide an accurate itemized statement as set forth above,

16 the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

17 initial violation and one hundred dollars ($100) for each subsequent violation, up to four

18 thousand dollars ($4,000) for each employee.

19     142.  HANSON alleges, upon information and belief, that APPLE failed to maintain

20 complete and accurate payroll records showing, inter alia, hours worked, including overtime and

21 rest breaks.

22     143.  APPLE knowingly and intentionally failed to furnish and continue to knowingly

23 and intentionally fail to furnish HANSON with accurate itemized statements as required by

24 Labor Code §226. As a result, APPLE is liable to HANSON for the amounts provided by Labor

25 Code §226.

26     WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

27

28

PLAINTIFF JINA HANSON'S COMPLAINT FOR DAMAGES

## ELEVENTH CAUSE OF ACTION
### Failure to Pay Wages Upon Termination
### In Violation of Labor Code §§201, et seq.
### (Against all APPLE)

144.    HANSON incorporates by reference and realleges Paragraphs 1 through 143 as though fully set forth herein.

145.    At all times relevant herein, Labor Code §201 provided that all wages owing to an employee shall become due and payable immediately upon termination of his or her employment.

146.    On or about April 21, 2013, APPLE terminated HANSON'S employment with APPLE. On the effective date of her termination, HANSON had earned and/or was owed certain wages and benefits, including without limitation, monies owed for work performed and unpaid, including overtime, and rest periods that were not included in her final paycheck and have not been paid to HANSON by APPLE as of the date of the filing of this Complaint.

147.    APPLE has failed and refused, and continues to fail and refuse, to pay HANSON all wages owed, including without limitation, monies owed for work performed and unpaid, including overtime, and rest periods.

148.    APPLE'S failure and refusal to pay HANSON all wages owing was and is willful. As such, and pursuant to Labor Code §203, HANSON'S wages shall continue as a penalty from the due date, and at the same rate, until paid, or for no more than 30 days.

149.    Pursuant to Labor Code §218.5, HANSON is entitled to and requests an award of reasonable attorney's fees and costs incurred in this action.

WHEREFORE, THOMAS prays judgment against DEFENDANTS as hereafter set forth.

## TWELFTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy
### (Against APPLE)

150.    HANSON incorporates by reference and realleges Paragraphs 1 through 149 as though fully set forth herein.

151.    At all times mentioned herein, APPLE was aware of HANSON'S medical condition that limited her ability to work and necessitated a medical leave of absence from

-26-

1    APPLE in 2012.

2       152.   In or about May 2012, HANSON exercised her right to take a medical leave of

3 absence due to her own serious medical condition requiring continued treatment and supervision

4 by her health care provider. HANSON provided APPLE with reasonable notice, or gave notice

5 as soon as possible, of her need for medical leave, including its expected timing and length.

6       153.   As more fully set forth above, APPLE either failed to allow HANSON, or

7 interfered with HANSON'S right, to take a medical leave of absence. Additionally, upon

8 HANSON'S return to work from medical leave, APPLE targeted HANSON, scrutinized her

9 work and micromanaged her. HANSON was held to a different disciplinary standard than the

10 male employees in the store and was issued more warning points for certain alleged company

11 policy violations than the males in the store for the same or similar conduct.

12       154.   Over the course of HANSON'S employment with APPLE, HANSON was also

13 subjected to other discriminatory/disparate treatment based on her gender, including, but not

14 limited to being called by demeaning gender-specific terms.

15       155.   In the latter part of January 2013 and continuing through February 2013,

16 HANSON complained to management, including NITTNER, about the disparate treatment to

17 which she was being subjected, including the unfair and discriminatory manner in which warning

18 points were being issued and about a male senior manager. To the best of HANSON'S

19 knowledge, her complaints of discrimination were not investigated by APPLE.

20       156.   Shortly after HANSON made her complaints to management, HANSON was

21 placed on a 30-day performance improvement plan. The plan contained several false entries,

22 including statements that management had met with HANSON on a number of dates.

23       157.   Though HANSON complied with all of the objectives of the performance

24 improvement plan, did not receive any further warnings for the duration of the applicable 30

25 days, and was acknowledged by her team at work and management for the positive strides she

26 had achieved over the last month, APPLE terminated HANSON'S employment with APPLE on

27 April 21, 2013.

28       158.   APPLE terminated HANSON'S employment as a proximate result of

1  HANSON'S request for and taking a medical leave of absence, and her complaints to
2  management about harassment/disparate treatment.

3      159.    APPLE'S termination of HANSON violated the Family Medical Leave Act and
4  the California Family Rights Act, both of which prohibit an employer from discharging or
5  otherwise retaliating against an employee for exercising her medical leave rights, including
6  taking a medical leave of absence.  APPLE'S termination of HANSON also violated the Fair
7  Employment and Housing Act, which prohibits an employer from harassing and discriminating
8  against an employee because of her gender and/or retaliating against her for complaining about
9  unlawful conduct under the Act. Said public policies affect the public at large.  APPLE'S
10  termination of HANSON was wrongful and the reasons alleged by APPLE for the termination
11  were pre-textual.

12      160.    As a direct and proximate result of the foregoing conduct, HANSON suffered the
13  loss of wages, salary, benefits and additional amounts of money HANSON would have
14  recovered had APPLE not terminated HANSON'S employment.  As a result of such conduct,
15  HANSON has suffered damages in an amount according to proof.

16      161.    As a further direct and proximate result of the foregoing conduct, HANSON has
17  incurred attorney's fees and costs in an amount according to proof.

18      162.    As a further direct and proximate result of the foregoing conduct, HANSON has
19  suffered humiliation, mental anguish, outrage, emotional and physical distress, and has been
20  injured in mind and body in that she also suffered severe trauma to her nervous system, a loss of
21  sleep, and problems with concentration, in an amount according to proof.

22      163.    APPLE acted with malice, oppression and fraud and in reckless disregard of
23  HANSON'S rights in engaging in the aforementioned conduct in that APPLE acted with the
24  intent to cause HANSON emotional distress, or with reckless disregard of the probability of
25  causing HANSON emotional distress. APPLE acted with malice, oppression and fraud, and in
26  reckless disregard of HANSON'S rights under the FEHA and the FMLA in that APPLE engaged
27  in acts of discrimination and retaliation by terminating HANSON. APPLE, through its managing
28  agents, officers and directors, including NITTNER, authorized and ratified the above conduct

-28-

and retaliation directed at HANSON. APPLE'S conduct warrants the assessment of punitive damages in an amount sufficient to punish APPLE and to deter others from engaging in similar misconduct.

WHEREFORE, HANSON prays judgment against APPLE as hereafter set forth.

### THIRTEENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(Against DEFENDANTS)**

164. HANSON incorporates by reference and realleges Paragraphs 1 through 163 as though fully set forth herein.

165. At all times relevant herein, HANSON was an employee of APPLE. In May 2012, HANSON exercised her rights under the law and requested and took a medical leave of absence for her own serious medical condition. Though HANSON'S leave was recommended and certified by her physician and her condition was well-documented and known by DEFENDANTS, DEFENDANTS retaliated against HANSON for taking a medical leave of absence by targeting HANSON, scrutinizing her work and micromanaging her upon her return from medical leave. DEFENDANTS also unfairly issued warning points to HANSON setting her up for termination.

166. At all relevant times herein, DEFENDANTS also subjected HANSON to harassment and disparate treatment based on her gender.

167. When HANSON complained about their unlawful conduct, DEFENDANTS placed HANSON on a 30-day performance improvement plan and, though HANSON met all of the objectives of the plan and received commendations from her colleagues and management, APPLE terminated HANSON'S employment on April 21, 2013. DEFENDANTS' conduct as set forth herein was intentional, malicious, extreme and outrageous and was done for the purpose of causing HANSON to suffer humiliation, mental anguish, and emotional distress. APPLE'S conduct in confirming and ratifying the conduct of its agents, employees and representatives, including NITTNER, was done with the knowledge that HANSON'S emotional distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to

-29-

HANSON. APPLE acted with the intent to cause HANSON emotional distress, or with reckless disregard of the probability of causing HANSON emotional distress.

168. The conduct of DEFENDANTS as set forth herein was intentional, malicious, extreme and outrageous and was done for the purpose of causing HANSON to suffer humiliation, mental anguish, and emotional distress. The acts of the DEFENDANTS alleged above were willful, wanton, malicious, outrageous and oppressive, and justify the awarding of exemplary and punitive damages.

WHEREFORE, HANSON prays judgment against all DEFENDANTS, and each of them, as hereafter set forth.

### FOURTEENTH CAUSE OF ACTION
Civil Penalties Under Labor Code §§2699, et seq.
(Against APPLE)

169. HANSON incorporates by reference and realleges Paragraphs 1 through 168 as though fully set forth herein.

170. HANSON is an "aggrieved employee" as that term is defined in the Private Attorney General Act (PAGA) pursuant to Labor Code §2699(a).

171. Pursuant to Labor Code §2699.3(a)(1), on January 21, 2014, HANSON gave written notice by certified mail to APPLE and to the LWDA of the factual and legal basis for the Labor Code violations alleged. A return receipt was received from the LWDA confirming receipt of HANSON'S letter with a postmark date of January 22, 2014. On or about February 20, 2014, a letter was received from the LWDA, dated February 19, 2014, stating the LWDA did not intend to investigate HANSON'S allegations. HANSON seeks all applicable civil penalties for violations of the Labor Code that have been committed by APPLE, including but not limited to civil penalties provided by Labor Code §§201, 204, 226, 226.7, 510, 512, and 1194, in addition to award of fees pursuant to Labor Code §2699(g).

172. As alleged above, APPLE is responsible for the commission of numerous violations of the Labor Code and applicable Wage Order provisions against HANSON, including failing to pay legally required overtime, provide rest periods, provide and maintain accurate

PLAINTIFF JINA HANSON'S COMPLAINT FOR DAMAGES

1    itemized payroll records and pay all wages due to HANSON upon discharge.

2    WHEREFORE, HANSON prays judgment against DEFENDANTS, and each of them, as

3    follows:

4    1.    For past and future compensatory economic damages including, but not limited

5    to, back pay, front pay, benefits and any other special damages and interest thereon in an amount

6    according to proof at trial;

7    2.    For past and future compensatory non-economic damages including, but not

8    limited to, emotional distress, pain and suffering and other general damages as allowed by law,

9    in an amount according to proof at trial;

10    3.    For reasonable attorney's fees as allowed by applicable statute, in an amount

11    according to proof;

12    4.    For costs of suit and expert fees pursuant to applicable statutes;

13    5.    For punitive and exemplary damages for any despicable conduct constituting

14    fraud, malice and/or oppression as those terms are defined in Civil Code section 3294;

15    6.    For all applicable civil penalties pursuant to Labor Code §§2699, et seq.;

16    7.    For such other and further relief as the court deems just and proper.

17    Dated: April 13, 2014      **DEVITO LAW GROUP**

18

19    By: _Gina DeVito (signature)_____

20          Gina DeVito
         Attorneys for Plaintiff
         JINA HANSON

21

22

23

24

25

26

27

28

PLAINTIFF JINA HANSON'S COMPLAINT FOR DAMAGES

# EXHIBIT B

1   Mitchell F. Boomer (State Bar No. 121441)
    JACKSON LEWIS P.C.
2   50 California Street, 9th Floor
    San Francisco, CA 94111
3   Telephone: (415) 394-9400
    Facsimile: (415) 394-9401
4   E-mail: boomerm@jacksonlewis.com

5   Attorneys for Defendants
    APPLE INC, and JEANNINE NITTNER
6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF MARIN – UNLIMITED JURISDICTION

10

11  JINA HANSON,                          Case No. CV 1401451

12          Plaintiff,                    DEFENDANT APPLE INC.'S
                                          ANSWER TO PLAINTIFF'S
13          v.                            COMPLAINT FOR DAMAGES

14  APPLE, INC. a Corporation; JEANNINE
    NITTNER; and DOES 1 through 15, inclusive,   Complaint Filed: 04/17/2014
15                                               Trial Date:     None set
            Defendants.
16

17

18          Defendant Apple Inc. (erroneously sued as "Apple, Inc." and referred to hereinafter as

19  "Defendant" or "Apple") hereby answers Plaintiff Jina Hanson's unverified complaint

20  ("Complaint") as follows:

21                            GENERAL DENIAL

22          Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies,

23  generally and specifically, each and every allegation contained in Plaintiff's Complaint.

24                         AFFIRMATIVE DEFENSES

25          By way of affirmative defenses to the allegations of the Complaint herein, Defendant

26  alleges as follows:

27                       FIRST AFFIRMATIVE DEFENSE

28          Plaintiff's Complaint as a whole, and each purported cause of action alleged therein, is

                                                    1                    Case No. CV 1401451
    DEFENDANT APPLE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

barred in whole or in part because, even assuming *arguendo* that Defendant's actions were motivated in part by a discriminatory, retaliatory or any other improper reason (which Defendant unequivocally denies), Defendant would have taken the same action against Plaintiff regardless of any alleged discriminatory, retaliatory or other improper reason. Specifically, Plaintiff's age, gender, alleged medical condition and/or disability, and any requests for time off from work or other accommodation(s) she may have requested, as well as any other protected activity in which she allegedly engaged were not, either individually or collectively, substantial motivating factors in any of Defendant's actions toward Plaintiff.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred because, to the extent that any actions of Defendant could be construed as unlawful discrimination, retaliation or harassment (all of which Defendant denies), Defendant exercised reasonable care to prevent such conduct and would have taken immediate and appropriate corrective action to remedy and stop any such alleged misconduct if Plaintiff had informed Defendant about the alleged misconduct. However, Plaintiff failed to utilize the preventive or corrective remedies provided by Defendant and failed to otherwise avoid such harm. Plaintiff's claims are therefore barred in whole or limited in part by the doctrine of avoidable consequences.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint and each purported cause of action alleged therein is preempted and barred in whole or in part because, to the extent Plaintiff alleges emotional or physical injury, this court lacks jurisdiction and any recovery is barred by the California Workers' Compensation Act's exclusive remedy doctrine. (California Labor Code Section 3602 *et.seq.*)

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's statutory claims for discrimination, harassment, failure to prevent discrimination, retaliation, failure to accommodate disability and/or provide leave of absence and failure to engage in the interactive process respectively are barred in whole or in part to the extent Plaintiff failed to meaningfully exhaust her administrative remedies for each of these claims in accordance with the California Fair Employment and Housing Act, Government Code sections

DEFENDANT APPLE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

1    12900 et seq.

<h2 style="text-align:center">FIFTH AFFIRMATIVE DEFENSE</h2>

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to participate in the interactive process are barred to the extent any allegedly denied accommodation would have posed an undue hardship on Defendant.

<h2 style="text-align:center">SIXTH AFFIRMATIVE DEFENSE</h2>

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to participate in the interactive process are barred to the extent Defendant offered Plaintiff reasonable accommodation, which was refused.

<h2 style="text-align:center">SEVENTH AFFIRMATIVE DEFENSE</h2>

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to participate in the interactive process are barred to the extent any allegedly denied accommodation would have presented a direct threat of substantial harm to Plaintiff or others.

<h2 style="text-align:center">EIGHTH AFFIRMATIVE DEFENSE</h2>

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to participate in the interactive process are barred to the extent any requested accommodation was excused because Defendant provided accommodation which enabled Plaintiff to perform her essential job functions.

<h2 style="text-align:center">NINTH AFFIRMATIVE DEFENSE</h2>

Plaintiff's Complaint and each purported cause of action alleged therein asserting that she was terminated for a discriminatory or wrongful reason is barred because Plaintiff's employment with Defendant had no specific term, and therefore was terminable at the will of either party, for any or no reason and with or without notice, pursuant to California Labor Code section 2922.

<h2 style="text-align:center">TENTH AFFIRMATIVE DEFENSE</h2>

Defendant is relieved of any liability whatsoever as to Plaintiff's claims for damages to the extent Plaintiff seeks redress for physical and emotional injuries arising from preexisting physical or mental conditions.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part by the doctrine of waiver.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part to the extent Plaintiff is estopped by her own conduct from establishing and/or recovering under any of those claims.

### THIRTEENTH AFFIRMATIVE DEFENSE

Defendant is informed and believes and thereupon alleges that Plaintiff should be barred from recovering damages for lost wages, or any such recovery should be reduced, by virtue of Plaintiff's failure to exercise reasonable diligence to mitigate her alleged damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred or limited to the extent the doctrine of after-acquired evidence applies and thereby limits or reduces Plaintiff's alleged damages.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint as a whole, and each purported cause of action alleged therein, is barred in whole or in part by the applicable statute of limitations.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for alleged rest break and meal period violations are barred to the extent Defendant informed Plaintiff of her right to take meal and rest periods, never denied her the right to take a meal or rest period and provided required meal periods in compliance with all California requirements; thus, Plaintiff voluntarily waived any right to take the meal or rest periods she claims to have missed.

DEFENDANT APPLE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by California Labor Code sections 2854 and 2856 to the extent Plaintiff failed to use ordinary care and diligence in the performance of her duties and failed to comply substantially with the reasonable directions of her employer.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for penalties under California Labor Code sections 201, et. seq. are barred, in whole or in part, because Defendant's conduct was not knowing, wilful or intentional.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are to be reduced by all income received by Plaintiff subsequent to her separation from employment with Defendant. Such income shall include, without limitation, all earned income, state disability payments, social security disability payments, private disability insurance benefits, Medi-Cal and Medicare benefits, and any other monies paid to Plaintiff in compensation for services rendered under any federal, state or local program or from any private insurance company.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's tenth cause of action is barred, in whole or in part, because Plaintiff did not suffer injury as a result of any alleged knowing and intentional failure by Defendant to comply with California Labor Code section 226(a).

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff take nothing by her Complaint;

2. That the Complaint be dismissed in its entirety with prejudice;

3. For cost of suit incurred herein, including reasonable attorney's fees; and,

4. For such other and further relief as the Court deems just and equitable.


Dated: May 21, 2014         JACKSON LEWIS P.C.

By: _____
Mitchell F. Boomer
Attorneys for Defendants
APPLE INC. and JEANNINE NITTNER

5        Case No. CV 1401451

DEFENDANT APPLE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

# PROOF OF SERVICE

I, Cheryl K. Baltru, declare that I am employed with the law firm of Jackson Lewis P.C., whose address is 50 California Street, 9th Floor, San Francisco, California 94111; I am over the age of eighteen (18) years and am not a party to this action.

On May 21, 2014, I served the attached **DEFENDANT APPLE INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES** in this action by placing a true and correct copy thereof, enclosed in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Gina DeVito<br>DeVito Law Group<br>1505 Bridgeway, Suite 203<br>Sausalito, CA 94965<br>Tel: 415-729-9118<br>Fax: 415-729-9117<br>gina@devitolaw.com | Attorneys for Plaintiff Jina Hanson |

☒    <u>BY MAIL</u>:  United States Postal Service by placing sealed envelopes with the postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California. **[( ) *Courtesy copy by fax.*]**

☐    <u>BY HAND DELIVERY</u>:  I caused such envelope(s) to be delivered by hand to the above address.

☐    <u>BY OVERNIGHT DELIVERY</u>:  I caused such envelope(s) to be delivered to the above address within 24 hours by overnight delivery service.

☐    <u>BY FACSIMILE</u>:  I caused such document to be transmitted by facsimile from our fax number (415) 394-9401 to the fax number indicated above (by written agreement, confirming letter dated and signed MM/DD/YY).

☐    <u>BY ELECTRONIC TRANSMISSION</u>:  I caused such document(s) to be electronically transmitted to the above email address. Above (by written agreement, pursuant to CRC Rule 2.260).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 21, 2014, at San Francisco, California.

_____
Cheryl K. Baltru

1  Mitchell F. Boomer (State Bar No. 121441)
   JACKSON LEWIS P.C.
2  50 California Street, 9th Floor
   San Francisco, CA 94111
3  Telephone: (415) 394-9400
   Facsimile: (415) 394-9401
4  E-mail: boomerm@jacksonlewis.com

5  Attorneys for Defendants
   APPLE INC. and JEANNINE NITTNER
6

7

FILED

MAY 2 1 2014

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: R. Smith, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF MARIN – UNLIMITED JURISDICTION

10

11  JINA HANSON,                              Case No. CV 1401451

12         Plaintiff,                         DEFENDANT JEANNINE NITTNER'S
                                              ANSWER TO PLAINTIFF'S
13      v.                                    COMPLAINT FOR DAMAGES

14  APPLE, INC. a Corporation; JEANNINE
    NITTNER; and DOES 1 through 15, inclusive, Complaint Filed: 04/17/2014
15                                            Trial Date:    None set
           Defendants.
16

17

18      Defendant Jeannine Nittner (referred to hereinafter as "Defendant" or "Nittner") hereby

19  answers Plaintiff Jina Hanson's unverified complaint ("Complaint") as follows:

20                              GENERAL DENIAL

21      Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies,

22  generally and specifically, each and every allegation contained in Plaintiff's Complaint.

23                          AFFIRMATIVE DEFENSES

24      By way of affirmative defenses to the allegations of the Complaint herein, Defendant

25  alleges as follows:

26                      FIRST AFFIRMATIVE DEFENSE

27      Plaintiff's Complaint as a whole, and each purported cause of action alleged therein, is

28  barred in whole or in part because, even assuming *arguendo* that Defendant's actions were

                                        1
        DEFENDANT NITTNER'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES
                                                      Case No. CV 1401451

motivated in part by a discriminatory, retaliatory or any other improper reason (which Defendant unequivocally denies), Defendant would have taken the same action against Plaintiff regardless of any alleged discriminatory, retaliatory or other improper reason. Specifically, Plaintiff's age, gender, alleged medical condition and/or disability, and any requests for time off from work or other accommodation(s) she may have requested, as well as any other protected activity in which she allegedly engaged were not, either individually or collectively, substantial motivating factors in any of Defendant's actions toward Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred because, to the extent that any actions of Defendant could be construed as unlawful discrimination, retaliation or harassment (all of which Defendant denies), Defendant exercised reasonable care to prevent such conduct and would have taken immediate and appropriate corrective action to remedy and stop any such alleged misconduct if Plaintiff had informed Defendant about the alleged misconduct. However, Plaintiff failed to utilize the preventive or corrective remedies provided by Defendant and failed to otherwise avoid such harm. Plaintiff's claims are therefore barred in whole or limited in part by the doctrine of avoidable consequences.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint and each purported cause of action alleged therein is preempted and barred in whole or in part because, to the extent Plaintiff alleges emotional or physical injury, this court lacks jurisdiction and any recovery is barred by the California Workers' Compensation Act's exclusive remedy doctrine. (California Labor Code Section 3602 et. seq.)

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's statutory claims for discrimination, harassment, failure to prevent discrimination, retaliation, failure to accommodate disability and/or provide leave of absence and failure to engage in the interactive process respectively are barred in whole or in part to the extent Plaintiff failed to meaningfully exhaust her administrative remedies for each of these claims in accordance with the California Fair Employment and Housing Act, Government Code sections 12900 et seq.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to participate in the interactive process are barred to the extent any allegedly denied accommodation would have posed an undue hardship on Defendant.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for disability discrimination, denial of reasonable accommodation and failure to provide rights under the Family Medical Leave Act are barred to the extent Defendant offered Plaintiff reasonable accommodation and/or leave, which was refused.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part against Defendant under the doctrine of managerial immunity.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part by the doctrine of waiver.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part to the extent Plaintiff is estopped by her own conduct from establishing and/or recovering under any of those claims.

### TENTH AFFIRMATIVE DEFENSE

Defendant is relieved of any liability whatsoever as to Plaintiff's claims for damages to the extent Plaintiff seeks redress for physical and emotional injuries arising from preexisting physical or mental conditions.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred or limited to the extent the doctrine of after-acquired evidence applies and thereby limits or reduces Plaintiff's alleged damages.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint as a whole, and each purported cause of action alleged therein, is

barred in whole or in part by the applicable statute of limitations.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant is informed and believes and thereupon alleges that Plaintiff should be barred from recovering damages for lost wages, or any such recovery should be reduced, by virtue of Plaintiff's failure to exercise reasonable diligence to mitigate her alleged damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are to be reduced by all income received by Plaintiff subsequent to her separation from employment with Defendant. Such income shall include, without limitation, all earned income, state disability payments, social security disability payments, private disability insurance benefits, Medi-Cal and Medicare benefits, and any other monies paid to Plaintiff in compensation for services rendered under any federal, state or local program or from any private insurance company.

WHEREFORE, Defendant prays for judgment as follows:

1.  That Plaintiff take nothing by her Complaint;

2.  That the Complaint be dismissed in its entirety with prejudice;

3.  For cost of suit incurred herein, including reasonable attorney's fees; and,

4.  For such other and further relief as the Court deems just and equitable.


Dated: May 21, 2014                     JACKSON LEWIS P.C.


                                        By: _____
                                            Mitchell F. Boomer
                                            Attorneys for Defendants
                                            APPLE INC. and JEANNINE NITTNER

4843-4081-8459, v. 2

1

**PROOF OF SERVICE**

2    I, Cheryl K. Baltru, declare that I am employed with the law firm of Jackson Lewis

3  P.C., whose address is 50 California Street, 9th Floor, San Francisco, California 94111; I am over

4  the age of eighteen (18) years and am not a party to this action.

5    On May 21, 2014, I served the attached **DEFENDANT JEANNINE**

6  **NITTNER'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES** in this action by

7  placing a true and correct copy thereof, enclosed in a sealed envelope(s), addressed as follows:

8

| Gina DeVito<br>DeVito Law Group<br>1505 Bridgeway, Suite 203<br>Sausalito, CA 94965<br>Tel: 415-729-9118<br>Fax: 415-729-9117<br>gina@devitolaw.com | Attorneys for Plaintiff Jina Hanson |
|---|---|

9
10
11
12

13  ☒  <u>BY MAIL</u>: United States Postal Service by placing sealed envelopes with the postage
thereon fully prepaid, placed for collection and mailing on this date, following ordinary
14  business practices, in the United States mail at San Francisco, California. **[( ) *Courtesy
copy by fax.*]**

15  ☐  <u>BY HAND DELIVERY</u>: I caused such envelope(s) to be delivered by hand to the above
address.
16

17  ☐  <u>BY OVERNIGHT DELIVERY</u>: I caused such envelope(s) to be delivered to the above
address within 24 hours by overnight delivery service.

18  ☐  <u>BY FACSIMILE</u>: I caused such document to be transmitted by facsimile from our fax
number (415) 394-9401 to the fax number indicated above (by written agreement,
19  confirming letter dated and signed MM/DD/YY).

20  ☐  <u>BY ELECTRONIC TRANSMISSION</u>: I caused such document(s) to be electronically
transmitted to the above email address. Above (by written agreement, pursuant to CRC
21  Rule 2.260).

22    I declare under penalty of perjury under the laws of the State of California that the

23  above is true and correct.

24    Executed on May 21, 2014, at San Francisco, California.

25

26

27    _____
      Cheryl K. Baltru

28

JS 44 (Rev. 12/12) cand rev (1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
JINA HANSON

**DEFENDANTS**
APPLE INC. and JEANNINE NITTNER

**(b)** County of Residence of First Listed Plaintiff   Marin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gina Devito, Esq. (SBN 153647)
Angie Guevara, Esq. (SBN 226288)
Devito Law Group
1505 Bridgeway, Suite 203, Sausalito, CA  94965
Tel.: (415) 729-9118; Fax: (415) 729-9117

Attorneys *(If Known)*
Mitchell F. Boomer (SBN 121441)
Joshua A. Kuns (SBN 272206)
Jackson Lewis P.C., 50 California St., 9th Fl., San Francisco, CA  94111-4615
Tel.: (415) 394-9400; Fax:  (415) 394-9401
E-mail: boomerm@jacksonlewis.com; joshua.kuns@jacksonlewis.com

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff
☒ 3   Federal Question *(U.S. Government Not a Party)*
☐ 2   U.S. Government Defendant
☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities Employment<br>☐ 446 Amer. w/Disabilities Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☒ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.*; 28 U.S.C. §1331.
Brief description of cause:
Alleged retaliation and discrimination by Defendants due to Plaintiff's exercise of FMLA rights.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Unstated
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*
JUDGE _____   DOCKET NUMBER _____

**IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)**
(Place an "X" in One Box Only)
(X)  SAN FRANCISCO/OAKLAND   ( )  SAN JOSE   ( )  EUREKA

DATE
May 22, 2014

SIGNATURE OF ATTORNEY OF RECORD
/s/Mitchell F. Boomer

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a)**     **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b)**     **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c)**     **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.